

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*
January 23, 2026

By ECF
Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:  *Clarke v. Nassau County Correctional Center, et al.,*
Civil Action No. 25-cv-6773 (Brown, J.)

Dear Judge Brown:

This Office and Federal Respondents U.S. Department of Homeland Security and the Executive Office for Immigration Review respectfully submit this letter in further response to Your Honor's December 18, 2025 Memorandum and Order ("December 18 Order"), reported at 2025 WL 3674471. The December 18 Order sought specific information concerning compliance with this Court's Orders and the conditions of detention at the Central Islip Hold Room ("CIHR"), a facility operated by Immigration and Customs Enforcement ("ICE") at the Central Islip Courthouse.  By letter dated December 23, 2025 (the "December 23 Letter"), this Office provided a preliminary response to the Court's Order. This supplemental submission completes our response.

### A.     CIHR Conditions

The December 18 Order expressed concerns regarding conditions of confinement at the CIHR based on statements made by Petitioner Erron Anthony Clarke ("Mr. Clarke") and other petitioners.  *See* 2025 WL 3684472 at *3, 6-8.  In response to the concerns expressed by this (and other courts), ICE provides the following information, which includes changes that ICE has implemented, or is planning to implement, at the CIHR.

### 1. Limits on Detention Times

As stated in the December 23 Letter, ICE is now limiting detention times at the CIHR. With the understanding that ICE operates 24 hours a day, and detainees may need to be brought to the CIHR after hours, absent exceptional circumstances (temporary and unforeseen circumstances that require immediate action), ICE will: (a) transfer all detainees in the CIHR to other facilities each evening regardless of the stage of post arrest processing; and (b) detentions will be limited to 12 hours, after which detainees will be transferred elsewhere.  Declaration of Assistant Field Office Director Brian Flanagan ("Flanagan Dec.") at ¶ 7.

## 2. Limits on the Number of Persons in CIHR Holding Rooms

There are four CIHR holding rooms, two of which measure approximately 7' by 10', and two of which measure approximately 8' by 10'. Flanagan Dec. at ¶ 8. In response to the Court's concerns regarding the number of individuals detained in these holding rooms, *see* 2025 WL 3674471 at *7, absent exceptional circumstances, ICE will limit the capacity for each room to no more than two persons. *Id.* at ¶ 10.

## 3. Temperature and Lighting

The CIHR holding rooms are climate controlled by the same Heating Ventilation and Air Conditioning system as the rest of the Courthouse building, which is operated by the General Services Administration. The entire area, including working areas for ICE personnel, holding rooms, and interview rooms are normally maintained at or slightly above normal room temperature. In addition, ICE offers additional clothing and mylar blankets to detainees who prefer warmer temperatures. Flanagan Dec. at ¶ 11.

At ICE's request, the GSA has replaced the lightbulbs in the CIHR holding rooms with ones that have lower wattage. ICE is also assessing whether changes can be made to the lighting system in the CIHR to allow for specialized, low-intensity illumination in CIHR holding rooms for evening hours to address concerns expressed by Mr. Clarke and the Court while accounting for security needs. Flanagan Dec. at ¶ 12.

## 4. Medical Care

CIHR detainees are interviewed during processing to determine whether they have any medical issues. If there are any medical issues that require immediate attention, detainees are transported to local hospitals for evaluation and treatment. Emergency first aid kits and defibrillators are available on site. Flanagan Dec. at ¶ 13.

## 5. Meals and Water

When detainees are booked into the CIHR, they are provided with a pre-packaged "heater meal"[1] upon arrival, and additional meals during normal mealtimes or upon request. ICE provides bottled water with each meal, and additional bottles are provided as needed or upon request. Flanagan Dec. at ¶ 14.

## 6. Sleeping Mats and Changes of Clothes

CIHR holding rooms do not have beds. ICE does, however, provide detainees with padded mats to rest on upon request. ICE also provides changes of clothes upon request. Flanagan Dec. at ¶ 15.

---

[1] Meals prepared on site by adding water to packaged contents.

## 7. Personal Hygiene

Although the CIHR cells do not have showers, each cell has a toilet and sink. Flanagan Dec. at ¶ 9. ICE provides detainees paper towels, wet-wipes, and toothbrushes with toothpaste, as needed or when requested. Detainees are separated by gender and female detainees are provided with hygienic products upon request. *Id*. at ¶ 15.

## 8. Phone Calls

CIHR detainees are allowed to make phone calls upon arrival at the CIHR and ICE allows additional calls as needed. ICE makes CIHR interview rooms available for confidential calls, including calls to counsel. Flanagan Dec. at ¶ 16.

## 9. Detainee Notice of Rights

ICE plans to provide all persons detained at the CIHR with a list of rights to which they are entitled, including the right to calls with counsel, food, water, changes in clothes, and personal hygiene items. Flanagan Dec. at ¶ 17.

## B. The Diaz Declaration

This Office and ICE have carefully reviewed the Court's findings concerning the December 16, 2025 Declaration of Supervisory Detention and Deportation Officer John Diaz ("Diaz Dec."). In particular, the Court found that the declaration contained false statements regarding when Mr. Clarke was booked in and out of, and transported among, the CIHR, NCCC, and Delaney Hall (an ICE detention facility in Newark, New Jersey). 2025 WL 3674471 at *4.

A review of records and other information indicates that the statements contained in the Diaz Dec. accurately reflected the information contained in ICE's databases regarding Mr. Clarke, which information was inaccurate. Flanagan Dec. at ¶ 18; December 23, 2026 Declaration of SDDO Diaz. at ¶¶ 3-5. Thus, while Officer Diaz's statements provided inaccurate information, they were not intentionally false and certainly were not intended to be misleading. *See* December 23, 2026 Declaration of SDDO Diaz. at ¶ 7.

ICE is addressing the data entry failures that resulted in the inaccurate recording of information regarding Mr. Clarke in ICE records that served as source documents for the Diaz Declaration. The goal is to eliminate such inaccuracies in the future. Flanagan Dec. at ¶¶ 21-22.

## C. Compliance With Court Orders

The December 18 Order identified four instances of ICE's non-compliance with Court directives (2025 WL 3674471 at *9), and directed that cause be shown as to why the Court should not issue an order or some other remedy against ICE for non-compliance. We address each of these instances below. In doing so, we note that in response to the Court's concerns, and to streamline agency workflow and compliance with Court orders and inquires, ICE has established a Habeas Response Team. The, which comprises personnel from various units and sub-offices reporting directly to a Deputy Field Office Director, is specifically tasked with providing timely operational support and responses to habeas litigation. Flanagan Dec. at ¶ 20. In addition to

establishing the Habeas Response Team, ICE has co-located an attorney at the CIHR for the purpose of assisting with compliance with Court orders. Flanagan Dec. at ¶ 23.

### 1. The Court's Order that Mr. Clarke be Released

As stated in the December 23 Letter, this Office immediately informed ICE of the Court's December 11 Order directing that Mr. Clarke be released from detention and has determined that ICE actually released Mr. Clarke that day. Mr. Clarke's counsel has confirmed that Mr. Clarke was released on December 11, 2025. Thus, there was no violation of the Court's order of release.

### 2. Production of Photographs of the CIHR

With leave of the Court, ICE has submitted photographs of the CIHR under seal for *in camera* review by Your Honor. This request was made due to security and operational concerns. The Government agrees that leave to submit the photographs to the Court consistent with these concerns could have been sought earlier.

### 3. Production of Mr. Clarke

The Court directed that Mr. Clarke be produced for the December 11, 2025 conference in this case. Although Mr. Clarke was ultimately made available by telephone, Mr. Clarke was not physically produced, as directed. This was the result of an oversight. In fact, Mr. Clarke had been in the CIHR the evening before the conference. Ironically, Mr. Clarke was transferred from CIHR for operational reasons (*i.e.* to reduce the time Mr. Clarke was housed at the CIHR). Otherwise, Mr. Clarke would have been available for the conference.

### 4. CIHR Holding Room Capacity

As noted above, in response to the concerns expressed by the Court regarding the number of persons confined with Mr. Clarke, ICE will limit the capacity for each of the four CIHR holding rooms to no more than two persons, absent exceptional circumstances. Flanagan Dec. at ¶ 10. The Government respectfully requests that ICE's response to the Court's concern also be deemed a sufficient response to the Court's order requiring ICE to provide the capacity for the holding rooms.

*　　　*　　　*

This Office and ICE fully understand the obligation to comply with all orders of the Court. We respectfully request that the Court consider the information above as well as in our December 23 submission, including the efforts undertaken to comply with the Court's directives, and determine that no sanction against ICE be rendered.

Further, we also respectfully request that the Court modify its adverse credibility determination concerning Officer Diaz as the misstatements in his Declaration were not willful.[2]

---

[2] The Court's findings concerning the December 16 Diaz declaration have been cited recently for the proposition that "ICE officials have misrepresented booking times in declarations before this District for purposes of

Respectfully submitted,
JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/ *Richard K. Hayes*
        Richard K. Hayes
        Assistant U.S. Attorney
        (718) 254-6050
        richard.hayes@usdoj.gov

cc: Counsel for Petitioner (by ECF)

---

litigation advantage." *Flores-Linares v. Bondi, et al.*, No. 26-cv-00298, 2026 WL 179208 at *4 (E.D.N.Y. Jan. 22, 2026) (SJB).  There was certainly no intent to do so in this case.  As discussed above, Officer Diaz's statements were the product of honest mistake.  Moreover, there was no litigation advantage to be gained, nor was one sought in this case.  The Court had granted Mr. Clarke's habeas petition and Mr. Clarke had been released prior to the submission the December 16 Declaration.