UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERRON ANTHONY CLARKE,<br><br>                    *Petitioner*,<br><br>   v.<br><br>NASSAU COUNTY CORRECTIONAL CENTER, *et al.*,<br>                    *Respondents*. | No. 25-cv-6773 (GRB)<br><br>D<small>ECLARATION OF</small> A<small>SSISTANT</small> F<small>IELD</small> O<small>FFICE</small> D<small>IRECTOR</small> B<small>RYAN</small> F<small>LANAGAN</small> |

I, Bryan Flanagan, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. I am an Assistant Field Office Director ("AFOD") in the New York City Field Office of Enforcement and Removal Operations ("ERO New York") at U.S. Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS").

2. I joined ICE as an Immigration Enforcement Agent ("IEA") in February of 2006 and was assigned to the ERO New York City Field Office Field Office. I was then promoted to Deportation Officer where my responsibilities included identifying, arresting, and removing non-citizens who violated U.S. Immigration laws. I was selected as a Supervisory Detention and Deportation Officer on May of 2018 and in that role I was responsible for leading teams and managing the arrest, detention, and removal of non-citizens who violated immigration laws while focusing on national security and public safety risks, as well as handling complex cases, coordinating with other law enforcement agencies, managing detention

logistics, and ensuring legal compliance for removing individuals from the U.S. I was promoted to Assistant Field Office Director on or about August of 2022.

3. As the AFOD I have been responsible for, among other things the Transportation and Removal Operations for the ERO New York City Field Office, as well as temporarily serving in an acting capacity as one of two Deputy Field Office Directors for the ERO New York City Field Office with oversight of specific units within the 5-boroughs of New York City, Long Island, and Hudson Valley Region. Currently, I am directly overseeing ICE's Long Island sub-office which encompasses Nassau and Suffolk counties. In this role I am responsible for, among other things, oversight of the civil immigration arrest and detention of aliens in the Nassau and Suffolk counties.

4. I have direct personal knowledge of the conditions in the Central Islip Hold Room ("CIHR") where arrests made by personnel are processed. In my role as the AFOD, I have access to records maintained in the ordinary course of business by ICE, including documentary records concerning ERO New York City and the alien detainees who fall within its responsibility. This includes information concerning the arrest and detention of persons subject to removal that is maintained in EAGLE, a booking application used by ICE law enforcement officers to process the biometric and biographic information of individuals arrested by ICE for criminal violations of law and administrative violations of the Immigration and Nationality Act, and EARM, an electronic database that captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by ICE.

5. I respectfully submit this Declaration in response to the Court's December 18, 2025 Memorandum and Order ("December 18 Order"), in which the Court expressed concerns about conditions of detention at the Central Islip Hold Room (CIHR") and required a response concerning compliance with Court Orders. I base this declaration on my own personal knowledge, experience and training and, among other things, information provided by ICE personnel, review of ICE records, including ICE's electronic databases, and from ICE detention facilities.

### Length of Detention in Central Islip Hold Room Going Forward

6. ICE Hold Rooms are temporary processing facilities where individuals arrested by ICE may be processed, which includes fingerprinting, completing paperwork, and making arrangements for bed space in detention facilities.

7. In response to the Court's concerns, and with the understanding that ICE operates 24 hours a day, and detainees may need to be brought to the CIHR after hours, absent exceptional circumstances (temporary and unforeseen circumstances that require immediate action), ICE will: (a) transfer all detainees in the CIHR to other facilities each evening regardless of the stage of post arrest processing; and (b) detentions will be limited to 12 hours, after which detainees will be transferred elsewhere.

### Central Islip Hold Room Description and Procedures

8. The CIHR has four holding rooms. Two of those rooms measure approximately ten feet by seven feet, and the other two rooms measure approximately eight feet by ten feet. These approximations are based on measurements with a tape measurer and are not architectural specifications.

3

9. Each holding room is equipped with bathroom facilities including a sink/water fountain and toilet located behind a privacy barrier at the back of each room. Due to security and safety reasons, the privacy barrier is not a full-length wall. Because the CIHR is a temporary arrest processing space, the holding rooms do not have showers.

10. In response to the Court's concerns regarding the capacity of the CIHR holding rooms, absent exceptional circumstances, ICE will limit the capacity for each room to no more than two persons.

11. The CIHR holding rooms are climate controlled by the same Heating Ventilation and Air Conditioning system as the rest of the Alfonse M. D'Amato U. S. Courthouse and Federal Building, which is operated by the General Services Administration ("GSA"). The entire CIHR, including working areas for ICE personnel, holding rooms, and interview rooms are maintained at or slightly above normal room temperature. ICE offers mylar blankets and additional clothing to detainees who prefer warmer temperatures.

12. For safety and security reasons, each holding room has 24-hour lighting. In response to the concerns raised by the Court in the December 18 Order, at ICE's request, GSA has replaced the lightbulbs in the holding rooms with ones that have lower wattage. ICE is also assessing whether changes can be made to the lighting system in the CIHR to allow for specialized, low-intensity changes can be made to the lighting system in the CIHR to allow for specialized, low intensity illumination in the CIHR holding rooms.

13. CIHR detainees are interviewed during processing to determine if they have any medical issues. If there are medical issues that require immediate attention, detainees are transported to local hospitals for evaluation and treatment. The CIHR has emergency first aid kits and defibrillators if needed.

14. When detainees are booked into the CIHR, they are provided with a pre-packaged "heater meal" and additional meals during normal mealtimes or upon request. ICE also provides bottled water with each meal and additional bottles are provided as needed or upon request.

15. ICE provides detainees with padded mats to rest on and a change of clothes, paper towels, wet-wipes, as well as wipes, disposable toothbrushes with toothpaste as needed and on request. Detainees in the CIHR are separated by gender and female detainees are provided with hygienic products upon request.

16. Detainees are allowed phone calls upon arrival at the CHIR and ICE allows additional calls as needed. ICE makes CIHR interview rooms available for confidential calls, including calls to counsel.

17. The CIHR will be providing a written notice of rights to which detainees are entitled, including the rights to attorney phone calls, food, water, clothes, and personal hygiene items.

**ICE Records**

18. I have investigated the inaccuracies in the December 16, 2025 Declaration of Supervisory Detention and Deportation Officer ("SDDO") John C. Diaz noted by the Court the December 18 Order. Based on information obtained from numerous sources, including EARM, the Nassau County Correctional Center, ICE's Delaney Hall Detention Facility, CCTV footage from the U.S. Courthouse and Federal Building, and discussions with ICE personnel, including SDDO Diaz, the principal basis for the inaccuracies was the entry of inaccurate data into our electronic systems. SDDO Diaz used this information to prepare his December 16 Declaration. Although SDDO Diaz accurately recounted the information from EARM, the information was nonetheless inaccurate due to errors in data entry.

## Additional Measures

19. In consideration of the facts and circumstances of this case, and in response the December 18 Order, ERO New York City and in particular the Long Island sub-office will take the following measures.

20. To streamline agency workflow and improve compliance with Court Orders and inquiries, ERO-NYC has stood up a Habeas Response Team comprised of personnel from various units and sub-offices reporting directly to a Deputy Field Office Director that is specifically tasked with providing timely operational support and responses to taskings related to habeas litigation.

21. Personnel in the Long Island sub-office are being directed to improve Data Quality Integrity practices to ensure that ICE records reflect, to the maximum extent possible, the most accurate information available so that other ICE personnel relying on such data are not inadvertently misled by data-entry errors or discrepancies caused by delays in administrative paperwork processing such as the ones that occurred in this case.

22. ICE is implementing mandatory quarterly training for Long Island sub-office personnel on best practices in maintaining data integrity and refreshers on record keeping procedures, potentially scaling back to bi-annual training at a later time based on operational needs.

23. Additionally, ICE's Office of Principal Legal Advisor has assigned an attorney to be co-located with ERO-NYC personnel in the Long Island sub-office. That attorney's responsibilities will encompass providing legal support and counsel to ICE personnel in the sub-office on matters including but not limited to arrest procedures and federal district court litigation. The attorney will also provide guidance and training to Long Island sub-office personnel regarding compliance with Court Orders.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed at New York, NY
This 23rd day of January 2026

BRYAN J FLANAGAN
Digitally signed by BRYAN J FLANAGAN

Bryan Flanagan
Assistant Field Office Director
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security